**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| **UNITED STATES OF AMERICA** | ) | | |
| | ) | | |
| **v.** | ) | **No.** | **1:21-cr-00028-APM-15** |
| | ) | | |
| **JASON DOLAN,** | ) | | |
| | ) | | |
| **Defendant.** | ) | | |

**GOVERNMENT'S MOTION FOR REVOCATION OF ORDER OF RELEASE**

Defendant Jason Dolan should be detained pending trial, as he is a danger to the community. Like detained co-defendant Kenneth Harrelson (as "Gator 6"), Defendant Dolan (as "Turmoil") helped lead a group of Oath Keepers who organized and plotted with coconspirators to stop the certification of the Electoral College vote, prepared to use violence if necessary, and stormed the Capitol. Like Harrelson, Defendant Dolan deposited his weapons at the "QRF hotel" in Arlington before coming into Washington, D.C. But unlike Harrelson, who still had firearms at his house upon his arrest, Dolan has since hidden his firearms.

For these reasons, the Court should revoke the order of release entered on June 3, 2021, by Magistrate Judge William Matthewman of the U.S. District Court for the Southern District of Florida, in case 9:21-mj-08212-BER-1.[1]

## I.  **Background**

Video recorded on January 6, 2021, captured the defendant among a "stack" of more than a dozen individuals dressed in camouflaged para-military gear moving in a deliberate and organized manner toward the Capitol building. An additional recording shows the stack moments later embedded near the front of a violent mob that is attempting to break open the doors of the

---

[1] In the Southern District of Florida, Judge Matthewman initially stayed his release order until June 4, and then until June 10, and finally until this Court resolves the instant motion.

Capitol building.  The video depicts the doors later opening and the subsequent flow of people into the building, to include the defendant and members of the stack.  Selfies and surveillance video taken inside of the Capitol Rotunda further evince Defendant Dolan's and his coconspirators' presence inside.

Co-defendant Jessica Watkins characterized their insurgent effort to breach the Capitol building as "forcing entry into the Capitol building" and said that it was "[f]orced.  Like Rugby." On the afternoon and evening of January 6, co-defendant Graydon Young wrote on Facebook that "[w]e stormed and got inside."  Co-defendant Kelly Meggs wrote in a Signal chat, "Ok who gives a damn who went in there…. We are now the enemy of the State."  An hour later, Kelly Meggs wrote to the same Signal chat: "We aren't quitting!!  We are reloading!!"

Based on his actions described above, on May 26, 2021, a grand jury issued a fourth superseding indictment charging Defendant Dolan with conspiracy, in violation of 18 U.S.C. § 371 (a felony); destruction of government property, in violation of 18 U.S.C. § 1361 (a felony); obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2) (a felony); and entering a restricted building without lawful authority, in violation of 18 U.S.C. § 1752(a) (a misdemeanor).

On May 27, 2021, the FBI arrested Defendant Dolan in the Southern District of Florida. The FBI also searched Defendant Dolan's house.

On May 28, 2021, Defendant Dolan had his initial appearance before Magistrate Judge Bruce E. Reinhart.  On the government's motion, Judge Reinhart ordered Defendant Dolan detained during a short continuance, pursuant to 18 U.S.C. § 3142(f).

On June 2, 2021, Judge Matthewman conducted a detention hearing at which FBI Special Agent Justin Spence testified.  The case was continued until the following day.  On June 3, 2021, Judge Matthewman denied the government's motion for detention and ordered Defendant Dolan

released.  On June 6, 2021, Judge Matthewman entered an order further explaining his release decision.[2]

## II.   <u>Legal Standard</u>

### a.   **Detention Hearing**

The government submits this motion for revocation of Judge Matthewman's release order pursuant to 18 U.S.C. § 3145(a)(1).  The Court's review should be *de novo*.

"Although the D.C. Circuit has yet to opine on the question, substantial precedent supports the view that a magistrate judge's detention order is subject to *de novo* review by the district court." *United States v. Cua*, No. CR 21-107 (RDM), 2021 WL 918255, at *3 (D.D.C. Mar. 10, 2021) (citation omitted).  Indeed, the D.C. Circuit recently noted that Chief Judge Howell conducted a *de novo* review of a release order under Section 3145(a), and that district courts have "broad discretion" to review magistrate judges' detention decisions.  *United States v. Munchel*, 991 F.3d 1273, 1280 & n.3 (D.C. Cir. 2021) (citation omitted).

Upon holding a detention hearing, the Court "shall order" a defendant detained if it "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e).  Here, there are no conditions that could assure the latter; in other words, releasing the defendant would present a "danger to the community."  *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019).

"When the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community," the Supreme Court has

---

[2] Judge Matthewman's order is attached as Exhibit 1.  The transcripts from the June 2 and 3 hearings are attached Exhibits 2 and 3, respectively.  Note that the date in the caption of the transcripts is incorrectly listed as 2020 rather than 2021.

explained, "a court may disable the arrestee from executing that threat." *United States v. Salerno*, 481 U.S. 739, 751 (1987).  Notably, "the threat need not be of physical violence, and may extend to 'non-physical harms such as corrupting a union.'" *Munchel*, 991 F.3d at 1283 (quoting *United States v. King*, 849 F.2d 485, 487 n.2 (11th Cir. 1988)).  "In assessing whether pretrial detention is warranted for dangerousness, the district court considers four statutory factors: (1) 'the nature and circumstances of the offense charged,' (2) 'the weight of the evidence against the person,' (3) 'the history and characteristics of the person,' and (4) 'the nature and seriousness of the danger to any person or the community that would be posed by the persons' release.'" *Id*. at 1279 (quoting 18 U.S.C. § 3142(g)).

At a detention hearing, the government may present evidence by way of a proffer.  *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

### b.    Application of Presumption and Factors To Be Considered

As Judge Matthewman found, there is a presumption of detention under Section 3142(e). Under Section 3142(e)(3)(C), the presumption arises if the offense – here, felony destruction of property under Section 1361 – is "listed in [S]ection 2332b(g)(5)(B)" and carries "a maximum term of imprisonment of 10 years or more."  It is, and it does.

Moreover, the offense of felony destruction of property not only gives rise to the presumption of detention under Section 3142(e)(3)(C), but it *also* constitutes a federal crime of terrorism as part of the nature and circumstances of the offense to be considered under Section 3142(g)(1).[3]

---

[3] To show that the offense is a "[f]ederal crime of terrorism" to be considered as part of the "nature and circumstances of the offense" under Section 3142(g)(1), the government must meet both of Section 2332b(g)(5)'s prongs: (A) purpose of offense and (B) enumeration of offense.   The conduct of Defendant Dolan and his coconspirators – invading and temporarily taking over the national legislature while it was convening, pursuant to federal law, to formally count the ballots for the presidential election – was clearly "calculated to influence or affect the conduct of

Here, the government is not relying on the strength of the evidence as to the Section 1361 violation to support Defendant Dolan's detention.  In fact, once the grand jury has found probable cause that Defendant Dolan violated Section 1361 (felony) – and here, it has – the government has satisfied its burden under Section 3142(f)[4] to trigger a detention analysis under Section 3142(g). *See United States v. Singleton*, 182 F.3d 7, 12 (D.C. Cir. 1999).

### III.   <u>Argument</u>

Defendant Dolan cannot rebut the presumption of detention under Section 3142(e)(3)(C). And the factors to be considered under Section 3142(g) support Defendant Dolan's continued detention.

Defendant Dolan is similarly situated to co-defendant Harrelson, and so he should be detained pretrial like Harrelson.  They drove to Washington, D.C., together – in a car rented by Dolan.  On their way into the city, they went to the "QRF hotel" in Ballston together – presumably to deposit their high-powered weapons.  They stayed at the Hilton Garden Inn together.  On January 5, they travelled together near the Capitol – likely to conduct surveillance for their operation the following day.  On January 6, they arrived at the Capitol together shortly before 2 p.m., and before the remaining members of the stack; the two men then together assumed a position near the top of the east side stairs.  At around 2:40 p.m., both men – together with the other members of the stack – forcibly entered the Capitol.  They were both recording their crime; in fact, Dolan's hands, holding his Android phone, are visible in Harrelson's video.

---

government by intimidation or coercion" under Section 2332b(g)(5)(A).  And because the offense is enumerated in Section 2332b(g)(5)(B), the definition of "[f]ederal crime of terrorism" has been satisfied.

[4] The same rationale would apply to the detention analysis under Section 3142(e)(3)(C).

Their similarities then continued into the Capitol building.  They stayed together inside, heading south towards the House of Representatives after they penetrated the Rotunda.  With co-defendant Kelly Meggs, they went towards Statuary Hall and then congregated near the hallway to the Speaker's office.  Defendant Dolan eventually left the Capitol – with Harrelson – about 17 minutes after he forced his way in.

On January 7, the two men left the city together and travelled back to the Comfort Inn Ballston.  There, they collected their weapons.  Then, in Defendant Dolan's rented car, they drove home to South Florida.

While some of the "plus factors" that warranted detaining Harrelson that do not apply to Defendant Dolan – notably, Harrelson lied at his detention hearing, was anointed the "ground team lead" by Kelly Meggs, and had a "go bag" and firearms at his house at the time of his arrest – Defendant Dolan has two significant "plus factors" himself.  First, he appears to have learned from Harrelson's arrest two months prior, because he cleaned his house of weapons and Oath Keepers clothing.  Second, Defendant Dolan is still espousing a troubling conspiracy-theory belief that the Capitol Police wanted the rioters to come inside the building and disengaged the "magnetic locks" that would allow the doors to open – illustrating a lack of remorse and continued danger from Defendant Dolan.

In addition, Defendant Dolan recruited others to the Oath Keepers and has since taken significant efforts to delete or secrete evidence.

### a.  **Firearms**

The government submits that Defendant Dolan has access to multiple high-powered firearms, and he is dangerous because he has hidden them.

1.   <u>Bases for government's belief</u>

*Neighbors*.  At the time of Defendant Dolan's arrest on May 27, the FBI interviewed his neighbors.  One neighbor (N-1) reported that Defendant Dolan owned multiple firearms, including at least two assault rifles and a 9mm handgun.  N-1 stated that Defendant Dolan always wore the 9mm handgun on his person.  Another neighbor (N-2) reported that N-2 believed Defendant Dolan owned firearms because Defendant Dolan spoke to N-2 about his firearms.

*Cell phone*.  The contact photo for Defendant Dolan's wife in his cell phone[5] shows her holding an AR-platform firearm:



*YouTube*.  The government obtained Defendant Dolan's records from Google (including YouTube).  From November 3, 2020, through April 2021, Defendant Dolan often left comments on videos on channels related to firearms, including a channel devoted to "AR15."  In some of the comments Defendant Dolan affirmatively mentions his own firearms, like the following December 1, 2020, comment: "I use my knife daily, my flashlight weekly, my first aid kit monthly and my firearms.....well, that's another story."  In a December 9, 2020, comment, he wrote about buying his daughter a firearm when she was 7 years old.

---

[5] Defendant Dolan's cell phone has not yet been forensically examined.

*Department of Defense records*.   According to the Department of Defense, Defendant Dolan was a marksmanship instructor in the Marine Corps for approximately a decade.

*Comfort Inn Ballston / Co-defendant Harrelson*.   Like the government's evidence against co-defendant Harrelson,[6] the evidence against Defendant Dolan shows that he went to the Comfort Inn Ballston (the "QRF hotel") on January 5, likely to deposit his weapons, and then returned with Harrelson on January 7 to collect them.

In the Florida Signal Chat, Harrelson's reference to needing to locate his "shit" on the morning on January 7 is most naturally read as a reference to his weapons, given that his clothing and other personal effects would have been with him at the Hilton Garden Inn (where, with Dolan, he appears to have spent the nights of January 5 and 6).  Especially in light of the fact that co-defendant Kelly Meggs had previously advised that "Dc is no guns," (ECF 127 at ¶ 39),  the most logical inference is that Defendant Dolan – along with Harrelson – left the guns with his comrades just over the border in Virginia in anticipation of an opportunity to use them later in the nation's capital.

The below still frames from the Comfort Inn surveillance video capture Defendant Dolan and co-defendant Harrelson retrieving at least three long gun cases on the morning of January 7. It appears that the two men were travelling alone together (in Defendant Dolan's rented car), as no one leaves the hotel with them.[7]

---

[6] The government incorporates its evidence against co-defendant Harrelson (ECF 152) on this point.

[7] The third person in the picture appears to be assisting them with the retrieval.









2. Dangerousness

Given his actions in forcibly storming the Capitol, Defendant Dolan's access to multiple firearms makes him almost by definition a danger to the community.  This is especially true because he is hiding those firearms from the government.

Neither Defendant Dolan nor his wife admitted to having firearms in the house.  In fact, at the time the FBI arrested Defendant Dolan and searched the house he shares with his wife, both he and his wife told the FBI that there were no firearms present in the house – and that neither of them owned any firearms.  He also answered "no" to Pretrial Services' question about whether there were "firearms in residence."

While the FBI recovered one long gun from Harrelson's house, it did not locate any long gun cases.  The implication is that Defendant Dolan had the long gun cases in his possession, but has since hidden them (along with the long guns themselves).[8]

The recovery of multiple firearms from premises controlled by a defendant can "clearly show that the defendant is a danger to the community" and must be detained, even when none of the charges against the defendant involve violent acts.  *United States v. Nikolow*, 534 F. Supp. 2d 37, 39 (D.D.C. 2008).  If that premise applies to the recovery of multiple firearms, it is especially true for the *hiding* of multiple firearms.

**b.  Gateway Pundit Interview**

Just two weeks ago, Defendant Dolan apparently gave an interview to the Gateway Pundit, describing his actions on January 6 and a conspiracy theory about the Capitol Police actually

---

[8] Dolan rents the house he shares with his wife, and the government is not aware of Defendant Dolan owning any other properties.  Indeed, his counsel proffered that Defendant Dolan does not own any property at all.  6/3/21 Tr. at 36.

unlocking the "magnetic" doors to let him inside.[9]  Judge Matthewman held that the government

did not meet its burden to prove that Defendant Dolan in fact gave the interview.  The government

does so below.

The interviewee, whose voice was intentionally masked by the website operator, described

himself in terms that match Defendant Dolan.

*First*, the interviewee said he was on the steps when the stack of other Oath Keepers

approached:

> So, I was up on the steps with another member of Oath Keepers and what
> had end up happening is we didn't know where anybody was…alright so I
> am on the steps with only one other member of Oath Keepers, and we
> actually at this point we see other Oath Keepers down at the bottom of the
> steps and we just raise our hands and kid of wave at them and they see
> us… that's where you have the infamous stack video.

Defendant Dolan was in fact standing next to Harrelson at the top of the steps:



---

[9]     See      https://www.thegatewaypundit.com/2021/05/huge-exclusive-us-capitol-doors-jan-6-
magnetically-locked-someone-inside-capitol-security-release.   Attached as Exhibit 4 is a rough
transcript of the audio of the interviewee posted on the website.

*Second*, the interviewee said he was a "20-year US Marine Veteran, I am retired." Defendant Dolan retired from the Marines after 20 years of service.

*Third*, the interviewee provided two photographs to the website ostensibly to show the "magnetic lock":



Video recovered from Harrelson's phone shows Defendant Dolan standing in front of Harrelson, holding up his Android cell phone, and taking a picture of almost the precise scene that the interviewee later provided to the website.  A screenshot from Harrelson's video (IMG_1399) is below, showing some of the same clothing, types and location of flags, and doors:



Fourth, the interviewee said he was an Oath Keeper, that he entered the Capitol with the stack, and that he expected to be arrested soon.  Of the approximately 13 members of the stack, all but 6 had been arrested at the time the interviewee made his comments.  (The arrests of Defendant Dolan and co-defendants Hackett and Isaacs have since brought that number down to 3.)

**c.  Recruitment**

On December 16, 2020, Defendant Dolan commented on a YouTube video: "Well, If you're interested in supporting your town, community, neighbors, state, and country then join the Oath Keepers!!! …Don't feel alone in your fight for America, join a militia."

On December 22, 2020, Defendant Dolan simply left the following comment on a YouTube video: "Join the Oathkeepers."

**d.  GoToMeeting Planning**

Like Harrelson, Defendant Dolan was heavily involved in GoToMeeting sessions leading up to January 6.  He attended more than 10 sessions (most under his phone number and one under his name), including the "dc planning call" that Harrelson organized on January 3:





**e.  Actions Inside the Capitol**

Defendant Dolan appears to spend his approximately 17 minutes inside the Capitol with co-defendants Harrelson and Kelly Meggs.

From the Capitol surveillance video, Defendant Dolan is seen forcibly entering the building at around 2:40 p.m.:



A photojournalist captured Defendant Dolan (green oval) and co-defendant Harrelson (red oval) storming from the just-breached east doors into the Rotunda, at the front of a pack of several of their coconspirators[10]:



---

[10]   See   http://www.kentnishimura.com/january-6-2021-siege-trump-supporters-storming--us-capitol-attack.

In the Capitol surveillance video, Defendant Dolan first moves into the Rotunda, where he is just in front of co-defendants Harrelson and Young:



In the video from Harrelson's phone (IMG_1399), starting at around 1:21 on the counter, the crowd loudly chants, "Treason!  Treason!"  At the 1:45 mark, a person – it's unclear if it's Harrelson, Defendant Dolan, or someone standing near them – yells, "This is our fucking house!"  At the 2:27 mark, a person – again, it's unclear if it's Harrelson, Defendant Dolan, or someone standing near them – states, "We took the fucking Capitol."

Defendant Dolan, with other members of the conspiracy, including notably co-defendants Kelly Meggs and Harrelson, moved south, across the Rotunda, into Statuary Hall:



The men then congregate for about six minutes in a vestibule near the Speaker's formal office, as shown in a photo from the vantage point of a person standing in this area:



The coconspirators' movements and statements are relevant to their intent, and their dangerousness. When Defendant Dolan moved south in the direction of the House chamber, it is reasonable to infer that he and his coconspirators may have been going to look for Speaker Nancy Pelosi. Indeed, on the evening of January 6, co-defendant Caldwell (who remained outside the Capitol but apparently was in communication with coconspirators inside) wrote: "Proud boys scuffled with cops and drove them inside to hide. Breached the doors. One guy made it all the way to the house floor, another to Pelosi's office. A good time." And co-defendant Kelly Meggs,[11] with whom Defendant Dolan appears to have been travelling while inside the Capitol, had the following exchange with another person on the night of January 6 on Signal about having sought out Speaker Pelosi:



Indeed, surveillance video shows that Defendant Dolan – along with co-defendants Kelly Meggs and Harrelson – was in this area for several minutes after leaving Statutory Hall. He re-

---

[11] In the extraction from his cell phone, co-defendant Kelly Meggs's name appears as "Kelly Dad." Also, the time zone is UTC, which in January was five hours ahead of Eastern Time.

entered the Rotunda from this area at around 2:52 p.m.  Defendant Dolan remained inside the

Capitol for about 17 minutes in total, until finally leaving with Harrelson at around 2:57 p.m.:



### f.   <u>Deleting and Hiding Evidence</u>

In addition to stashing his firearms, Defendant Dolan appears to have taken additional steps

to distance himself from the Oath Keepers and individuals associated with the Oath Keepers after

January 6.

The records from Google show that Defendant Dolan deleted all of his emails around

March 12, 2021.  The timing is conspicuous:  That is the same day that co-defendant Harrelson

was indicted – and the day after Harrelson had his initial appearance, which garnered media

attention.

On January 6, Defendant Dolan (with the red arrow) was wearing a black "Oath Keepers"

t-shirt while standing on the steps of the Capitol:



The FBI did not locate the t-shirt during an exhaustive search of Defendant Dolan's house.  The FBI also did not locate his tan gloves or his olive gaiter.

Finally, defense counsel represented at the earlier hearing that Defendant Dolan had cut off contact with the Oath Keepers.  *See* 6/3/21 Tr. at 31 ("If he had an association with the Oath Keepers, he has completely disassociated himself with them. . . . [T]here was no contact with him and the Oath Keepers, there was no continuing contact.").  But records recovered from Harrelson's phone prove otherwise:  On March 2, 4, and 9, 2021, Defendant Dolan called Harrelson on Signal[12]:

---

[12] Because the Signal records were deleted by Harrelson but then forensically recovered, the "duration" of the answered calls appears to be nil.

| | Parties | Date | Time | Duration | Direction | Status | Source |
|---|---|---|---|---|---|---|---|
| 2 | **From:** Jason Jason<br>**To:** GATOR 6 GATOR 6 | 3/9/2021 | 3/9/2021 8:24:03 PM(UTC-5) | 00:00:00 | Incoming | Answered | Signal |
| 3 | **From:** Jason Jason<br>**To:** GATOR 6 GATOR 6 | 3/4/2021 | 3/4/2021 2:06:41 PM(UTC-5) | 00:00:00 | Incoming | Answered | Signal |
| 7 | **From:** Jason Jason<br>**To:** GATOR 6 GATOR 6 | 3/2/2021 | 3/2/2021 5:27:35 PM(UTC-5) | 00:00:00 | Incoming | Answered | Signal |

And Harrelson was arrested on March 10, the day after Defendant Dolan's last call to him.

**IV.     <u>CONCLUSION</u>**

For all these reasons, the government submits that Defendant Dolan has not rebutted the presumption under Section 3142(e)(3)(C) that he be detained pretrial, as there are no conditions that will reasonably assure the safety of the community.  Judge Matthewman's release order should be revoked, and Defendant Dolan should be detained pending trial.

Respectfully submitted,

CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY

By:

Jeffrey S. Nestler
Assistant United States Attorney
D.C. Bar No. 978296
Ahmed M. Baset
Troy A. Edwards, Jr.
Louis Manzo
Kathryn Rakoczy
Assistant United States Attorneys
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.

Washington, D.C. 20530


*/s/ Alexandra Hughes*

Alexandra Hughes
Justin Sher
Trial Attorneys
National Security Division
United States Department of Justice
950 Pennsylvania Avenue
NW Washington, D.C. 20004