# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | No. 1:21-cr-00028-APM-15 |
| **v.** ) | |
| **JASON DOLAN** ) | |
| **Defendant** ) | |

## DEFENDANT JASON DOLAN'S RESPONSE TO GOVERNMENT'S MOTION FOR REVOCATION OF ORDER OF RELEASE

Now comes Defendant, Jason Dolan, by and through his undersigned counsel, Michael T. van der Veen, and hereby submits this Response to the Government's Motion for Revocation of Order of Release.

### I.  Procedural History

On or about May 26, 2021, a United States District Court for the District of Columbia Grand Jury formally indicted Defendant of having committed violations of 18 U.S.C. § 371 (Conspiracy), 18 U.S.C. §§ 1512(c)(2), (Obstruction of an Official Proceeding and Aiding and Abetting), 18 U.S.C. §§ 1361, 2 (Destruction of Government Property and Aiding and Abetting), and 18 U.S.C. § 1752(a)(1), (Entering and Remaining in a Restricted Building or Grounds).

On May 27, 2021, the FBI arrested Defendant in the Southern District of Florida. The Government moved for pre-trial detention of Defendant on the basis that he is a substantial or serious risk of flight or nonappearance and a danger to the community. The U.S. Probation Office conducted a pretrial services interview of Defendant and rendered a report recommending Defendant be released on conditions. (See Exhibit 1).

1

On May 28, 2021, Defendant appeared before Magistrate Judge Bruce E. Reinhart. On the Government's motion, Judge Reinhart ordered Defendant be detained pending a continuance.

On June 2, 2021, Judge Matthewman presided over a detention hearing, which was begun and then continued until the following day. The Government proceeded by proffer rather than calling live witnesses and Special Agent Justin Spence was submitted for cross-examination.

On June 3, 2021, Judge Matthewman found that the presumption of detention under Section 3142 (e)(3)(C) was successfully rebutted by the defense, denied the Government's motion for detention, and ordered Defendant released. This appeal followed. The Government seeks Mr. Dolan's pretrial detention based on dangerousness to the community.

## II.     Standard of Review

"Neither Section 3142 nor Section 3145 specifies the standard of review to be applied by a district court reviewing a magistrate judge's release or detention order, and 'the D.C. Circuit has not yet addressed the issue.'" *United States v. Hunt*, 240 F. Supp. 3d 128, 132-33 (D.D.C. 2017). "Nonetheless, both the Bail Reform Act of 1984 and the Federal Magistrates Act, 28 U.S.C. Section 636 support the conclusion reached by every circuit to have considered the question, that a district court reviews a magistrate judge's release or detention order *de novo*." *Id*.

As this Court reviews the findings of the magistrate court, it will do so using a *de novo* standard of review. "The Court is free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons." *U.S. v. Johnston*, 2017 U.S. Dist. LEXIS 159461, *8 (D.C. Cir. 2017) (citing *U.S. v. Hubbard*, 962 F.Supp.2d 212, 215 (D.D.C.2013) (quoting *U.S. v. Sheffield*, 799 F.Supp. 2d 18, 20 (D.D.C. 2011)).

### III.   Factual Background

The Government alleges that Mr. Dolan participated in the January 6 Capitol riots as a member of the Oath Keepers; specifically, they aver that he conspired with fifteen others to illegally enter the Capitol on January 6th and interrupt the Joint Session of the United States House of Representatives and the United States Senate convened in the Capitol to certify the electoral college vote of the 2020 U.S. Presidential Election. The Government alleges that Mr. Dolan illegally entered the Capitol building, unarmed, where he stayed for, according to Special Agent Spence's sworn testimony, less than 10 minutes before exiting. Unlike some of the other alleged co-conspirators, Defendant is neither accused of assaulting any police personnel, nor carrying any weapons including firearms or zipties, He did not damage, loot or remove any property. During the short period that Defendant is alleged to have been inside the Capitol, he remained only in the Capitol Rotunda and other public areas of the Capitol. Mr. Dolan did not enter the Senate or House Chambers or any Congressional offices. By the time he is alleged to have entered the Capitol at 2:40 p.m., the proceedings had already been adjourned. Defendant is neither accused of being a leader nor organizer of the Oath Keepers and the evidence proffered by the Government establishes that Mr. Dolan did not attend any leadership meetings. In fact, the first mention of Mr. Dolan's involvement in the indictment is not until a meeting on January 3, 2021.

### IV.   Legal Analysis

In our society, liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987); *id*. at 750 (holding that the "individual's strong interest in [pretrial] liberty is "fundamental."). This is because America has as a founding principle that "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause." *Foucha v. Louisiana,* 504 U.S. 71, 80 (1992) (citing *Youngberg v. Romeo*, 457 U.S. 307, 316 (1982)). Determination of whether a defendant should be

3

detained must always begin with a presumption in favor of release. *U.S. v. Ali Muhamed Ali*, 793 F. Supp. 2d 386, 387 (D.D.C. 2011).

"The Bail Reform Act of 1984 (Act), 18 U.S.C.S §3141 *et seq*., sets forth the limited circumstances in which a defendant may be detained before trial despite the presumption in favor of liberty." *U.S. v. Yaming Nina Qi Hanson*, 613 F. Supp. 2d 85, 86 (D.D.C. 2009). The court is tasked with determining whether the defendant poses a flight risk or a danger to any other person and the community. 18 U.S.C. §3142.

Determination of whether the defendant poses a danger to the community is determined by a standard of clear and convincing evidence. *U.S. v. Ali Muhamed Ali*, 793 F. Supp. 2d at 387. Clear and convincing evidence means proof that the particular defendant actually poses a danger to the community, not that a defendant "in theory" poses a danger. *U.S v. Patriarca*, 948 F.2d 789 (1st Cir. 1991). Only if there is a "strong probability that a person will commit additional crimes if released" is the community interest in safety sufficiently compelling to overcome the criminal defendant's right to liberty. *U.S. v. Ploof*, 851 F.2d 7 (1st. Cir. 1988).

Preliminarily, it is worth noting the recent decision of the U.S. Court of Appeals for the District of Columbia Circuit in *United States v. Munchel*, 991 F.3d 1273, 1275 (D.C. Cir.), judgment entered, 844 F. App'x 373 (D.C. Cir. 2021), which established that to detain, the "Government [must] prove by clear and convincing evidence that an arrestee *presents an identified and articulable threat* to an individual or the community." (emphasis added).

Furthermore, "[i]n assessing whether pretrial detention is warranted for dangerousness, the district court considers four statutory factors: (1) 'the nature and circumstances of the offense charged,' (2) 'the weight of the evidence against the person,' (3) 'the history and characteristics of the person,' and (4) 'the nature and seriousness of the danger to any person or the community that

4

would be posed by the person's release.'" *United States v. Munchel*, 991 F.3d 1273, 1275 (D.C. Cir.), judgment entered, 844 F. App'x 373 (D.C. Cir. 2021).

In Mr. Dolan's case, the Government has unquestionably failed to establish by clear and convincing evidence that he poses an articulable threat to an individual or the community; nor has the Government established a clearly identified threat posed by Mr. Dolan's release. Application of the four factors to the instant matter inexorably leads to the conclusion that Mr. Dolan possesses no articulable threat of danger to the community and should be released.

    a. **<u>Nature and circumstances of the offense</u>**

When analyzing the first factor, Chief Judge Howell articulated "guideposts" for assessing "the comparative culpability of a given defendant in relation to fellow rioters: (1) whether the defendant has been charged with felony or misdemeanor offenses; (2) the extent of the defendant's prior planning; (3) whether the defendant used or carried a dangerous weapon; (4) evidence of coordination with other protestors before, during, or after the riot; (5) whether the defendant assumed a formal or de facto leadership role in the events of January 6, 2021, for example by 'encouraging other rioters' misconduct such as 'to confront law enforcement;' and (6) the defendant's words and movements during the riot – e.g. whether the defendant remained only on the grounds surrounding the Capitol or stormed into the Capitol interior, or whether the defendant injured, attempted to injure, or threatened to injure others. These factors, '[t]aken together, as applied to a given defendant, … are probative of 'the nature and circumstances of the offense charged,' 18 U.S.C. [Section] 3142(g)(1), and, in turn, of the danger posed by the defendant,' as relevant to the fourth Section 3142(g) factor." *Id.* at 20-21.

Regarding the first guidepost, whether the Defendant was charged with a felony or misdemeanor, Chief Judge Howell noted that "[f]elony charges are by definition more serious than

misdemeanor charges; the nature of a felony charge is therefore substantially more likely to weigh in favor of pretrial detention than the nature of a misdemeanor offense." However, "the conduct of a defendant who injured, attempted to injure, or threatened to injure others, or who damaged or attempted to damage federal property, is more troubling than the conduct of a defendant who, though unlawfully present in a restricted area, merely wandered the premises. *Id*. At 23-24.

Defendant is charged with three felonies and one misdemeanor; however, he is not accused of any of the "troubling conduct" that Chief Judge Howell notes. He is not accused of assaulting any law enforcement or encouraging other rioters to do so. Nor is Defendant accused of carrying any type of firearm or weapon. Mr. Dolan did not damage any property inside the Capitol. The United States admits that the considerable amount of evidence it has gathered to date confirms neither Mr. Dolan nor the co-defendants in this case damaged the windows on the Capitol doors – this damage was done prior to Mr. Dolan's entry into the Capitol. The video shown by the Government shows that Mr. Dolan went through open, undamaged doors. Again, Mr. Dolan did not engage in any violence. Although Defendant was legally licensed to carry firearms, he did not possess or use any on January 6th.

Furthermore, Mr. Dolan is not, as the Government portrays him, a leader of the Oath Keepers and should not be compared to Defendant Harrelson. While the two were associated, they are entirely distinct in their comparative culpability. The Government alleges that Harrelson was a leader of the Oath Keepers, known as "gator 6" and possessed administrative privileges on the Florida Signal chat. He attended or organized approximately 30 meetings on Go To Meeting related to the Oath Keepers. The Government further alleges that Harrelson, along with defendants Kelly and Connie Meggs, participated in a "gunfight oriented training" in the fall of 2020 using an AR-platform firearm.

Mr. Dolan, on the other hand, purchased a fifty-dollar subscription to the organization in mid to late November of 2020 and participated in some online chats. At no point did he possess administrative privileges in the online chats, nor organize meetings. He did not participate in leaders-only meetings, nor was he even mentioned in the indictment until January 3, 2021. No words of planning or organizing can be attributed to him. He may have been asked to tagalong, but he was not a leader. He is not alleged to have given or received any Oath Keeper training. On January 6, 2021, he was not in military garb. He is alleged to have entered and remained in the Capitol, according to the sworn testimony of Special Agent Spence, for less than 10 minutes. There has been no proffer that he destroyed any Government property.

Moreover, Mr. Dolan's actions were far less nefarious than those of other people charged as a result of the events of January 6th, the majority of whom have been released. A review of numerous other cases related to the January 6th breach of the Capitol reveals that the norm is release.

For example, in United States v. Chad Jones, 1:21-mj-00076-ZMF, Mr. Jones was charged with assaulting a police officer with the use of a deadly or dangerous weapon or infliction of bodily injury. Mr. Jones allegedly utilized a flagpole to forcefully strike and breakthrough the glass of the doorway where Ashley Babbitt was killed as she climbed through a broken pane. The Government did not request Mr. Jones's detention and Magistrate Judge Harvey released him on special conditions.

Similarly, in United States v. Vitali Gossjankowski, 1:21-cr-00123-PLF, Mr. Gossjankdowski was released, with no government objection, after being charged with assaulting a federal officer with a dangerous weapon, a taser, under Section 111(b). The allegations in support

of the complaint describe that an officer near Mr. Gossjankowski suffered a heart attack and was hospitalized after being tased multiple times.

In United States v. Rachel Powell, 1:21-mj-00197-GMH, Ms. Powell was charged with using a battering ram to break a large window of the Capitol in order to forcibly enter. The Government also alleges that Ms. Powell used a bullhorn to direct rioters inside the Capitol. She was released by Chief Judge Howell over the Government's objection.

In fact, one of the co-defendants in the instant matter, Mr. Caldwell, was originally detained. However, on May 28, 2021, the Government filed a motion objecting to the modifications of bail, and wrote regarding Mr. Caldwell, "a major part of his role in the conspiracy was organizing individuals who were on standby with guns in a hotel across the river, conduct that this court has described as among the most concerning aspects of the conspiracy and for which the evidence has only strengthened since Defendant Caldwell's release. Under these circumstances, the Government repleads confinement to his property with permission to leave for religious services and medical appointments is a completely reasonable and essential level of restrictiveness to insure the safety of the community."

As this Honorable Court is well-aware, the majority of the co-defendants in the instant matter have been released.

### b. **Weight of the evidence**

In determining whether conditions of release can ensure the safety of others, "[t]he weight of the evidence is the least important of the factors and the bail statute neither requires nor permits a pretrial determination of guilt." *United States v. Gebro*, 948 F.2d 1118, 1121-22 (9th Cir. 1991) (citing *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986)); *accord United States v. Jones*, 566 F. Supp. 2d 288, 292 (D.NY. 2008). The weight of the evidence against the accused is another

8

factor to be considered at the detention hearing, but it is the least significant factor. *United States v. Townsend*, 897 F.2d 989 (9th Cir. 1990). In the words of one district court judge, to presume risk of flight from strong "evidence" of guilt would be "tantamount to a presumption of guilt." *United States v. Gray*, 651 F. Supp. 432, 436 (W.D. Ark. 1987).

Again, Mr. Dolan would draw the Court's attention to the lack of any evidence demonstrating that he assumed an official, administrative, or organizational role in furthering any common scheme or plan of the collective. He did not injure or attempt to injure any officers; nor did he damage any property. Much of the Government's motion relies on "inference" and "likelihoods" of what Mr. Dolan ultimately intended to do, rather than what he actually did.

The Government places heavy emphasis on an anonymous Oath Keeper interview given to thegatewaypundit.com on May 24, 2021, which they assert to be Mr. Dolan. As Judge Matthewman already found, however, the Government failed to establish with any degree of reasonably certainty that the interviewee was in fact Mr. Dolan. Even if the interviewee was Mr. Dolan, the contents of said interview establish that no unlawful entry, violence or danger occurred. The interviewee's statement was that he was afraid he would be arrested, and he thought there was evidence that the doors were opened from the inside because they were opened outward, and controlled by magnetic locks, which is visible in the Government's photographs. He did not profess or promote violence then or now or at anytime in the future.

Similarly, the Government makes inferential leaps proffering that surveillance photos display Mr. Dolan pushing a luggage dolly with rifle cases on January 7, 2021. While the Government believes that participants in the Capitol breach used this hotel to store firearms, law enforcement cannot state with certainty the contents of those cases, or that it was even Mr. Dolan in the photographs. Beyond that, no weapons were used before, during or after January 6th. If the

guns were intended for use at the January 6th riot, that was certainly the time for it. The Government articulates no facts or circumstances to support their claim that Mr. Dolan's legal ownership and possession of guns on January 6th somehow equates that he is a danger to the community. There were neither any firearms located at his residence, nor in his possession.

### c. History and characteristics of the person

When the Court considers whether conditions of release may ensure the safety of any other person and the community, Section 3142 of 18 United States Code directs the Court to consider:

(A) The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) Whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law;

18 U.S.C. § 3142(g). At the time of the current offense, Mr. Dolan was not on probation, parole, or other release. Therefore, subsection (B) does not apply. Subsection (A) weighs in favor of release.

Mr. Dolan is of exemplary character. He was born in Jacksonville, Arkansas on June 26, 1976. He graduated from Lawrence High School in Lawrence, New Jersey, and he earned an Associate's Degree from Hawaii Pacific University in 2003. His mother resides in Georgia and his father is deceased. He has been married for 19 years and has an 18-year-old daughter. He lives with his wife and daughter in Wellington, Florida and has been associated with the same address for the past five years. Mr. Dolan has been unemployed for the past year and a half. He left his former employer, the Four Seasons Hotel in Palm Beach, Florida, to get his hip replacement surgery and consequently has been unable to obtain new employment.

Defendant is a decorated veteran who served in the United States Marine Corps from August 1994 until August 2014. He received an honorable discharge and reached the rank of Staff Sergeant. He received the Navy and Marine Corps achievement medal on August 6, 2003 and again on May 28, 2006; he further received a certificate of appreciation from former President Obama. (See collectively, Exhibit 2).

Mr. Dolan has absolutely no past conduct which would give even a shred of indication that he poses a risk of danger to any individual, witness or juror in this case. He has enormous respect for the law, as evidenced by his lack of criminal history and service with the United States military for twenty years. Mr. Dolan, while serving in the military, obtained the highest clearance possible, enabling him to protect the United States President. That Mr. Dolan was so highly regarded by the United States military as an individual of trust in a position addressing the security of others speaks volumes to his commitment to the wellbeing of his community and the assessment of his reputation by others. Such is the standing of his character that he was authorized to carry a firearm in the pursuit of his duties.

Defendant is 44 years old and has never been convicted of a crime. When he was in high school he was arrested in New Jersey for possession of "a firearm" at school. However, despite the title of the crime charged, he was actually arrested for displaying a pocket knife to his shop teacher. The charge was dismissed within 45 days. Several years later, when he was 23 years old, Mr. Dolan was arrested in South Carolina where he was escorted of a bar by a bouncer. That charge was also quickly withdrawn.

Moreover, in the five months following the January 6th incident, Mr. Dolan was not accused of any criminal wrongdoing. The pretrial services report correctly recommended, after conducting an interview of Mr. Dolan, that he be released. Mr. Dolan's character, physical and

mental condition, family ties, community ties, past conduct and lack of criminal history all weigh heavily in favor of his release.

### d. Nature and seriousness of the danger to any person or the community

The Government bears the ultimate burden of establishing that no series of conditions is sufficient to negate the risk of the accused's flight or dangerousness – by a preponderance of the evidence in the case of flight and by clear and convincing evidence in the case of dangerousness. *United States v. English*, 929 F.3d 311, 319 (2d Cir. 2011); see also *Stone*, 608 F.3d at 946. Clear and convincing evidence means proof that the defendant actually poses a danger to the community, not that a defendant "in theory" poses a danger. *U.S. v. Patriarca*, 948 F.2d 789 (1st Cir. 1991). Only when there is a "strong probability that a person will commit additional crimes if released" is the community interest in safety sufficiently compelling to overcome the criminal defendant's right to liberty. *Ploof*, 851 F.2d 7.

As discussed above, Mr. Dolan has no criminal history and enjoys significant ties to his community to such an extent pretrial services recommended his release.

### e. Conditions or combination of conditions that would ensure the defendant's compliance with court-ordered release conditions

It is well-established under federal law that a defendant will be released pending trial unless the Government can prove by clear and convincing evidence that pretrial detention is the *only* means by which the community's safety can be assured. 18 U.S.C. § 3142(f)(2)(B); *U.S. v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996), or can prove by a preponderance of the evidence that no conditions of release can assure the defendant's appearance at future court hearings. *U.S. v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988); *U.S. v. Hassanshahi*, 989 F.Supp. 2d 110 (D.D.C. 2013). Even if the Court determines that personal recognizance or an unsecured bond will not reasonably assure appearance or will endanger any other person or the community, 18 U.S.C.

§3142(c) still mandates release subject to certain specified conditions. The conditions, which must include that the person shall not violate any federal, state or local law, must be the least restrictive conditions necessary to reasonably assure the person's appearance and the community's safety. The provision that conditions "reasonably assure" appearance and safety does not require a guarantee of appearance or safety. See *U.S. v. O'Brien*, 895 F.2d 810 (1st Cir. 1990); *U.S. v. Fortna*, 769 F.2d 243 (5th Cir. 1985), cert. denied, 479 U.S. 950 (1986). It requires an "objectively reasonable" assurance of community safety and the defendant's appearance at trial. *Id*. Imposition of conditions of release must be supported by reasons why they are necessary to reasonably assure appearance or safety. *U.S. v. Spilotro*, 786 F.2d 808 (8th Cir. 1986).

This Honorable Court has a multitude of options to create conditions that would ensure Mr. Dolan's appearance and compliance. The special conditions ordered by Judge Matthewman are more than sufficient: (1) that defendant cannot obtain or apply for a new passport or travel documents; (2) he must report to pretrial services as directed; (3) he will have no contact whatsoever with any victims, witnesses, Oath Keepers, or anyone who participated or was involved in the attack on the U.S. Capitol on January 6, 2021; (4) he shall not possess any firearms, and there can be no firearms in his home; (5) he shall be on home incarceration with GPS location monitoring; (6) he shall be under the supervision of the U.S. Probation Office' Special Offender Unit; (7) he shall not possess encryption software on any computers/phones/devices; (8) he shall actively seek full-time employment that shall be approved by pretrial services or the Court; and (9) he will be restricted to traveling solely within the Southern District of Florida, and to the District of Columbia for court proceedings, but only when approved by U.S. probation or the Court. As previously discussed, Mr. Dolan has significant ties to his community, and a wife and

daughter willing to provide him with the support to perform well and fully comply with all conditions of his pretrial release.

## V. Conclusion

Mr. Dolan respectfully requests that this Honorable Court deny the Government's Motion for Revocation of Order of Release, and release him with whatever conditions that this Honorable Court deems appropriate.

**VAN DER VEEN, O'NEILL, HARTSHORN, AND LEVIN**

DATE: 06/10/21          BY:     */s/ Michael T. van der Veen*
                                Michael T. van der Veen
                                Attorney for Defendant
                                Pennsylvania Bar No. 75616
                                van der Veen, O'Neill, Hartshorn, and Levin
                                1219 Spruce Street
                                Philadelphia, PA 19107
                                P: (215) 546-1000
                                F: (215) 546-8529
                                mtv@mtvlaw.com